UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 5:25-CR-36 |
| v. | Violations: |
| BRADLEY TEMPLE,<br>Defendant. | 18 U.S.C. §1343<br>18 U.S.C. §1957 |

FILED
OCT -7 2025
U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

# INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment:

### The COVID-19 Pandemic and the CARES Act

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or about March 2020, designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic.

2. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

3. The Small Business Administration ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses. The SBA is headquartered in Washington, D.C. and maintains its computer servers outside of the State of West Virginia. The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities

1

after disasters.

4. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

## The Paycheck Protection Program

5. One of the loans created was the Paycheck Protection Program ("PPP") loan. This program provided loans to small businesses for job retention and certain other expenses.

6. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One requirement is that the business had to be in operation as of February 15, 2020. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its average monthly payroll expenses and number of employees. These figures were then used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, a business applying for a PPP loan had to provide documentation showing its payroll expenses.

7. A PPP loan application must be processed by a participating lender, such as a financial institution. If a PPP loan is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

8. The PPP loan proceeds must be used by the business on certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal of the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

9. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

## Economic Injury Disaster Loans

10. A second source of relief provided by the CARES Act was the authorization for the SBA to provide Economic Injury Disaster Loans ("EIDL") to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

11. In order to obtain an EIDL, a qualifying business had to submit an online application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the twelve-month period preceding the disaster, and the cost of goods the business sold in the twelve-month period preceding the disaster. In the case of EIDLs, the twelve-month period was that preceding January 31, 2020. The applicant also had to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

12. EIDL applications were submitted directly to the SBA online at https://covid19relief.sba.gov/#/ and processed by the agency with support from a government contractor, Rapid Finance. The amount of each loan was determined, based in part, on the information provided by the application about the number of employees, operating expenses for the twelve months prior to the date of the disaster, gross revenue for the twelve months prior to the disaster, and the cost of goods sold for the twelve months prior to the date of the disaster. Any funds issued under EIDL were issued directly by the SBA.

13. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

## COUNTS ONE THROUGH THREE

(Wire Fraud)

14. Paragraphs 1 through 13 are hereby realleged as if fully set forth herein.

15. Beginning in or about April 1, 2020 and continuing until in or about July 30, 2020 defendant **BRADLEY TEMPLE** knowingly devised, intended to devise, and participated in a scheme to defraud the United States by submitting a fraudulent PPP application and a fraudulent EIDL application containing false representations.

16. It was part of the scheme that **BRADLEY TEMPLE** submitted a PPP application in the name of a Righteous Brothers Trucking, a business he owned he owned.  The application signed by **BRADLEY TEMPLE** included false representations designed to fraudulently obtain proceeds ultimately from the SBA.

17. It was a further part of the scheme that **BRADLEY TEMPLE** would misrepresent and conceal material facts regarding the businesses for which he submitted a PPP loan application, including the number of employees at the business and the monthly payroll.  **BRADLEY TEMPLE** falsely certified under penalty of perjury that Righteous Brothers Trucking had a monthly payroll of $76,383 and had five employees.

18. It was part of the scheme that **BRADLEY TEMPLE** submitted a PPP loan application for Righteous Brothers Trucking and was awarded a PPP loan in the amount of $190,956.00.

19. It was part of the scheme that **BRADLEY TEMPLE** would misrepresent and conceal material facts regarding the business for which he submitted an EIDL loan application loan application, such as the cost of goods sold in the EIDL loan application.

20. It was part of the scheme that **BRADLEY TEMPLE** obtained an EIDL loan in the amount of $86,500 dollars.

21.  On or about the dates specified as to each count below, in Wheeling, Ohio County, in the Northern District of West Virginia, **BRADLEY TEMPLE** did knowingly transmit or cause to be transmitted by means of a wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description |
| --- | --- | --- |
| 1 | April 11, 2020 | An internet transmission to the SBA server in Iowa constituting a false and fraudulent application for a EIDL loan in the name Righteous Brothers Trucking, originating from Ohio County, West Virginia. |
| 2 | June 18, 2020 | An internet transmission to the SBA server in Virginia constituting a false and fraudulent application for a PPP loan in the name of Righteous Brothers Trucking, originating from Ohio County, West Virginia. |
| 3 | July 2, 2020 | An internet transmission to the SBA server in Iowa constituting a false and fraudulent authorization and agreement for an EIDL Loan in the name of Righteous Brothers Trucking originating from Ohio County, West Virginia. |

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

(Unlawful Monetary Transactions)

1. Paragraphs 1 through 21 of Count One are re-alleged and incorporated as though fully set forth herein.

2. On or about July 11, 2020, in Ohio County, in the Northern District of West Virginia, and elsewhere, defendant **BRADLEY TEMPLE**, did knowingly engage in a monetary transaction through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the defendant **BRADLEY TEMPLE**, made a monetary transactions in or affecting interstate commerce by or through a financial institution with funds having been derived from a specified unlawful activity, specifically wire fraud in violation of Title 18, United States Code, 1343, to wit: withdrew $40,0000 in a cashier check payable to Wolz & Wind Ford, in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION

Wire Fraud

1.  Pursuant to Title 28, United States Code, Sections 2461(c), Title 18 United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case, that is, the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, or a conspiracy to violate such offense, including a money judgment for the amount of such proceeds.

2.  Pursuant to Title 28, United States Code, Section 2461(c), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

A true bill,

/s/
Foreperson

/s/
RANDOLPH J. BERNARD
Acting United States Attorney

Jennifer T. Conklin
Assistant U.S. Attorney

Morgan McKee
Assistant U.S. Attorney